# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| Mary Beth KENNEDY, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   No. 13 C 5180 |
| | )   Magistrate Judge Susan E. Cox |
| Carolyn W. COLVIN, | ) |
| Acting Commissioner of the | ) |
| Social Security Administration, | ) |
| | ) |
|     Defendant. | ) |

## ORDER

Plaintiff, Mary Beth Kennedy, brings this action under 42 U.S.C. §405(g), seeking reversal or remand of the decision by Acting Commissioner of Social Security, defendant, Carolyn W. Colvin ("Commissioner"), denying her application for disability insurance benefits under Title II of the Social Security Act ("SSA"). This matter is before the Court on cross-motions for summary judgment.

The Administrative Law Judge ("ALJ") found plaintiff suffered from pelvic outlet obstruction, irritable bowel syndrome ("IBS"), headaches, and degenerative disc disease but found that she was not disabled because she could perform a full range of light work. The ALJ also found that plaintiff's mental impairment of anxiety did not cause more than minimal limitation in her ability to work.

Plaintiff makes several arguments as to why the ALJ's decision is not supported by substantial evidence. But the principal argument – and what we will focus on – is the ALJ's credibility assessment and her rejection of plaintiff's treating physician's opinions. Our review

1

finds that more explanation is needed from the ALJ, making a remand the appropriate conclusion.

The Court must sustain the Commissioner's findings of fact if they are supported by substantial evidence and are free of legal error.[1] Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion.[2] The standard of review is deferential, but the reviewing court must conduct a critical review of the evidence before affirming the Commissioner's decision.[3] Although the ALJ need not address every piece of evidence or testimony presented, he must adequately discuss the issues and build a logical bridge from the evidence to his conclusions.[4]

**Bowel Obstruction**. Due to a hysterectomy in 2001, plaintiff suffered damaged nerve endings on the bowel that cause her bowel response not to work properly.[5] At her hearing before the ALJ, she testified that "she has IBS and only moves her bowels once every three days."[6] The ALJ noted in her decision plaintiff's testimony that "she has to stay home on these days, and that her IBS keeps her home a minimum of 5 days a month."[7] The ALJ then referred to the log that plaintiff created of her bowel movements, which documented less than 10 good days per month,[8] and plaintiff's testimony that she would miss work often because of difficulties with her bowels.[9]

The ALJ's decision also reviewed plaintiff's treating doctor's records, Thomas Arndt, M.D., who had treated plaintiff for "multiple gastrointestinal problems since 2000."[10] The ALJ

---

[1] 42. U.S.C. § 405(g).
[2] *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011) (citing *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009)).
[3] *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008).
[4] *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010).
[5] R. at 16.
[6] *Id.*
[7] R. at 16.
[8] R. at 16.
[9] R. at 17.
[10] R. at 18.

referenced Dr. Arndt's treatment of plaintiff's IBS, "slow colonic transit time," and "pelvic floor dysfunction."[11] The ALJ also referenced Dr. Arndt's notes documenting that plaintiff's conditions caused her to experience abdominal pain, constipation, and painful bowel movements.[12] Dr. Arndt noted that plaintiff "required excessive doses of laxatives to have a bowel movement[], which was a major time consuming event."[13] Finally, the ALJ included Dr. Arndt's opinion that plaintiff would have a difficult time working due to her gastrointestinal issues, and that treatment was only marginally successful.

But when it came to assessing plaintiff's credibility, the ALJ found that "while she reports having a bathroom day every three days which takes all day, I am not persuaded by the calendar log that the claimant has submitted."[14] The explanation the ALJ gives for her disbelief is the timing: plaintiff had her hysterectomy in 2001 but did not quit working until 2008. The ALJ did not understand what changed in 2008 or, more importantly, what worsened in 2008.[15]

Yet the ALJ's opinion is replete with references to plaintiff's continued bowel problems throughout that time. In addition to Dr. Arndt's statements, the ALJ acknowledged plaintiff's reports in 2009 of having a bowel movement every third day and again in 2011 noted reports of plaintiff's "struggle to have bowel movements."[16] The ALJ also references plaintiff's mental health records, where her counselor notes that he has treated plaintiff from 2007 to 2010 and during that time plaintiff experienced IBS, "but has not experienced any consistent improvement with this problem."[17]

---

[11] R. at 18.
[12] R. at 18.
[13] R. at 18.
[14] R. at 22.
[15] R. a 22 (stating "it is unclear why her condition worsened in 2008 so that she is unable to work.").
[16] R. at 20.
[17] R. at 21.

Despite this evidence, the ALJ found plaintiff could perform light work, meaning she would not have to miss work due to her bowel obstruction. Yet the Vocational Expert testified that if an individual would likely miss every third day, there would be no competitive work.[18] The ALJ's conclusion required the ALJ to not only discredit plaintiff's testimony at the hearing, but also her statements throughout the 2001 to 2008 time period regarding her bowel problems, her treating doctor's opinion – which the ALJ gave "no weight" to in her decision – and, her treating social worker's acknowledgement of her ongoing issues relating to IBS. The regulations require that an ALJ consider the record as a whole,[19] which she did when she reviewed this array of evidence. But then the ALJ dismissed most of it. An ALJ is required to "adequately explain [her] credibility finding by discussing specific reasons supported by the record."[20] Here, after the ALJ gives no weight to two of plaintiff's treating doctors, including Dr. Arndt, we are left with little to no reasoning for the ALJ's disbelief that plaintiff would have difficultly working on the day she is required to empty her bowels.

If we review the hearing testimony, the ALJ asked plaintiff to explain what changed in 2008. She testified that working had become more difficult due to "pelvic outlet time…becoming longer and longer, so it was more difficult to come into the office at all on that day" and that "the boss was no longer tolerable of all my illnesses."[21] The ALJ apparently discredited this explanation, but did not say why. And if the ALJ was equating plaintiff's ability to work on those other days as an ability to sustain full-time work, or assuming another employer would be equally lenient, such a finding is in error.[22]

---

[18] R. at 67.
[19] SSR 96-7p, 1996 WL 374186 (July 2, 1996).
[20] *Pepper v. Colvin,* 712 F.3d 351, 367 (7th Cir. 2013).
[21] R. at 63.
[22] *See Garcia v. Colvin,* 741 F.3d 758, 760 (7th Cir. 2013)(holding that one can be employed full time without being capable of substantial gainful work, "paradox though that may seem," perhaps because of a lenient

4

The ALJ also discredits plaintiff when she finds that she has received conservative care. The ALJ notes in her decision that plaintiff has "not been referred for more aggressive pain management or therapy that would be recommended if her symptoms were as severe as alleged."[23] Then the ALJ refers to plaintiff only continuing physical therapy for pelvic outlet obstruction for 2 months. That treatment resulted in "all goals being achieved."[24] The ALJ then states that physical examination findings were "generally normal."[25] However, she concludes that those normal findings were based on "an inability to find a clinical explanation for her problems."[26]

There is a disconnect in the ALJ's determination that plaintiff would have – if she was actually as impaired as she claims – received more treatment. For example, if all goals were achieved in her therapy session, then no additional time was apparently needed in therapy. Yet such a conclusion must be considered with her treating physician's opinion that treatment was only "marginally successful."[27] (Though we recognize that the ALJ gave "no weight" to plaintiff's treating physician). The overall record seems to support plaintiff's claim that she has had difficulty treating her problem, rather than a failure to pursue more aggressive treatment.

Finally, we address the ALJ's determination to give "no weight" to Dr. Arndt's opinion. The ALJ's explanation for affording no weight to plaintiff's treating gastroenterologist is that treatment was only "marginally successful," his opinion was conclusory, and appeared to be sympathetic.[28] The Social Security regulations require an ALJ to consider several factors when assigning weight to a medical opinion, including the length and frequency of treatment and

---

employer); *see also Larson v. Astrue,* 615 F.3d 744, 752 (7th Cir. 2010)(noting the difference between being able to work a few hours a week and the ability to work full-time).
[23] R. at 22.
[24] *Id.*
[25] R. at 22.
[26] R. at 22.
[27] R. at 618.
[28] R. at 23.

whether the medical opinion was supported, and consistent with the record as a whole.[29] An ALJ must provide a "sound explanation" for her decision to reject a treating physician's opinion.[30]

Here, we have very little explanation from the ALJ as to why Dr. Arndt is given no weight, yet great weight was afforded the State agency physicians. The ALJ explains that the State agency physicians were consistent with plaintiff's treating social worker, but there is no comment regarding plaintiff's physical problems or what the State doctors concluded regarding her pelvic outlet obstruction. When we review the records cited to by the ALJ – when affording great weight to the State doctors – we find that "medical evidence in file supports allegations," and "no credibility issues."[31] An additional record the ALJ cites to references plaintiff's pelvic outlet syndrome, and follows with "statements of allegations are considered credible."[32] It also notes that plaintiff has not experienced "any consistent improvement" with her IBS and that she has "good days and bad days."[33] That record does, however, note that plaintiff's allegations regarding her limitations appear to be "extreme when compared to the objective findings in file."[34]

But none of this was directly addressed by the ALJ. We also have no way to assess whether the State agency physicians considered plaintiff's requirement to be at home to use the bathroom every three days. From the records relied upon by the ALJ, we only know that the State doctors generally found plaintiff's difficulties to be credible, which would not support the ALJ's ultimate conclusion.[35]

---

[29] 20 C.F.R. §§ 404.1527(c)(2)(I)-(ii), (c) (3)-(6).
[30] *Roddy v. Astrue,* 705 F. 3d 631, 636 (7th Cir. 2013).
[31] R. at 588.
[32] R. at 617.
[33] R. at 617.
[34] R. at 617.
[35] *See Santoro v. Astrue,* 2011 WL 528257, *9 (N.D.Ill. Feb. 7, 2011)(holding that the ALJ's reliance on state agency doctors, who did not treat the plaintiff, was inappropriate without an explanation of why the state doctors' conclusions were "more reliable" than those of the treating doctor).

Returning to the ALJ's review of Dr. Arndt, because he had treated plaintiff for over ten years (albeit with marginal success), noted consistent findings, and because he practiced in the relevant medical specialty, we find the ALJ's cursory dismissal of his opinion to be in error.[36] The ALJ must provide not only how she concluded that Dr. Arndt's opinion deserved no weight due to the three reasons she listed, she must also explain why the opinions of the State agency doctors deserved great weight, particularly with respect to plaintiff's bowel obstruction. Without more, we are unable to provide meaningful judicial review.[37]

We will not review the ALJ's analysis of plaintiff's headaches and degenerative disc disease, though the ALJ found those were also severe impairments. The ALJ's limited explanation relating to plaintiff's bowel obstruction alone warrants remand. Plaintiff's motion for summary judgment is, therefore, granted [dkt. 18] and the Commissioner's motion for summary judgment is hereby denied [dkt. 23].

**ENTER:**

**DATED:** June 24, 2014                                                  Susan E. Cox
                                                                                        Susan E. Cox
                                                                                        United States Magistrate Judge

---

[36] *See Campbell v. Astrue,* 627 F.3d 299, 308 (7 Cir. 2010)(finding the treating doctor was due great weight because of length of treatment, which was regular, and because of her specialty).

[37] *See Hopgood ex rel. L.G. v. Astrue,* 578 F.3d 696, 698 (7th Cir. 2009)(noting the rule that ALJ decisions must include evidentiary support to allow for "meaningful review.").